Paul N. Tranel
Katie C. Guffin
Bohyer, Erickson, Beaudette & Tranel, PC
PO Box 7729
Missoula, MT 59807-7729
Telephone (406) 532-7800
Email: mail@bebtlaw.com

*Attorneys for Plaintiff*

FILED
11/8/2024
Clerk, U.S. District Court
District of Montana
Billings Division

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>JAMES W. MCCORMICK and ASHLEY HATMAKER,<br><br>　　　　　Defendant. | Cause No. CV-24-161-BLG-TJC<br><br>The Hon. Timothy J. Cavan<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff American Casualty Company of Reading, Pennsylvania ("American Casualty") brings this action under the Declaratory Judgment Act, 28 U.S.C. Sections 2201-02, against Defendants James W. McCormick ("McCormick") and Ashley Hatmaker ("Hatmaker"). American Casualty alleges as follows:

**Nature of the Action**

1.　This is an action for declaratory relief related to insurance coverage for a lawsuit pending in Yellowstone County, Montana, namely,

*Ashley Hatmaker v. James McCormick*, Cause No. DV-56-2023-0000707-NE (the "Hatmaker Lawsuit"). A copy of the Complaint filed in that action is attached hereto as **Exhibit One.**

2.  American Casualty seeks this court's declaratory judgment that it has no duty to defend or indemnify McCormick against the allegations of the Hatmaker Lawsuit.

3.  A declaratory judgment is appropriate in this matter because in the underlying Hatmaker Lawsuit, Hatmaker seeks damages from McCormick, and the Lawsuit has been tendered to American Casualty. American Casualty disputes that it has any duty to defend or indemnify McCormick. Regardless, American Casualty is providing a defense to McCormick under a reservation of rights. *See* October 24, 2023 letter to James McCormick, attached as **Exhibit Two.**

4.  Ashley Hatmaker is also a proper party to this declaratory judgment action because she may be affected by a finding that American Casualty owes no duty to defend or indemnify James McCormick with regard to the claims and allegations made in the Hatmaker Lawsuit.

## The Parties

5. Plaintiff American Casualty is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 151 N. Franklin St., Chicago, IL 60606.

6. Based upon information and belief, Defendant James McCormick is a citizen and resident of Yellowstone County, Montana.

7. Based upon information and belief, Defendant Ashley Hatmaker is a citizen and resident of Yellowstone County, Montana.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. Section 1332 as the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

9. This Court has personal jurisdiction over the parties because American Casualty issued a policy of insurance to McCormick at his address in Laurel, Montana, the underlying claims at issue occurred in Yellowstone County, Montana, McCormick and Hatmaker both reside in Montana and are thus found in Montana, and the underlying litigation is pending in Yellowstone County, Montana.

10. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as the Professional Liability Policy at issue has a Professional Liability Limit of $1,000,000.00. The settlement demands made by Hatmaker far exceed the jurisdictional minimum of $75,000.00.

11. Venue is proper in this Court and this division per 28 U.S.C. Section 1391(1)(b)(2), and Local Rule of Procedure 3.2(b). The acts alleged in the underlying matter occurred in this District and Division and the insurance contract at issue was for delivery in this District and Division of this Court.

12. Title 28 U.S.C. Section 2201 authorizes this Court to grant the relief requested by American Casualty.

## The Insurance Policy

13. American Casualty issued Professional Liability Policy No. 0621816078 for the policy periods 11/02/2016 to 11/02/2017; 11/02/2017 to 11/02/2018; 11/02/2018 to 11/02/2019; 11/02/2019 to 11/02/2020; 11/02/2020 to 11/02/2021; and 11/02/2021 to 11/02/2022 with a liability limit of $1,000,000.00 "each claim." Each Policy includes the Endorsement Form GSL15564, which sets forth the Sexual Misconduct Exclusion. The Policy issued for the period 11/02/2020 to 11/02/2021 is attached as **Exhibit Three.**

14. The Sexual Misconduct Exclusion adds the following definition of Sexual Misconduct:

> **Sexual Misconduct** means:
>
> - Any type of physical touching or caressing, or attempt thereof, or suggestion thereof by **you** or by any person for whom **you** may be legally responsible, which could be considered sexual or erotic in nature, including consensual sexual activity or sexual activity in contravention of any professional code of ethics or conduct; or
>
> - Any act of sexual assault, harassment, abuse or molestation.

*See* Ex. Three, pg. 27.

15. The Sexual Misconduct Exclusion amends and replaces Exclusion P, as follows:

> **EXCLUSION P** is deleted in its entirety and replaced with the following:
>
> any act of **sexual misconduct** which has been determined to have occurred, by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not.
>
> This exclusion applies to all **claims** arising out of acts of **sexual misconduct** regardless of the legal theory or basis upon which the insured is alleged to be liable, including but not limited to assertions of improper or negligent hiring or employment, or failure to investigate or supervise.

*See* Ex. Three, pg. 28.

16. Each Policy also includes Exclusions, as set forth in Section V of

the Healthcare Providers Professional Liability Coverage Part (Form G-121501-C). *See* Ex. Three, pg. 18.

17. Section V, Exclusion K in each Policy states as follows:

We will not defend any **claim** for, or pay any amounts, including **claim expenses**, based on, arising out of, or related to:

> K. **injury** or **damage you** expected or intended, or which a reasonable person would have expected. This exclusion does not apply to **injury** or **damage** resulting from the use of reasonable force to protect persons or property.

*See* Ex. Three, pg. 19.

18. Because there is no coverage for Hatmaker's claims and allegations, American Casualty has no duty to defend or indemnify James McCormick against the Hatmaker Lawsuit, and American Casualty is entitled to a declaratory judgment accordingly.

### The Factual Allegations Against James McCormick

19. On June 26, 2023, Ashley Hatmaker filed a Complaint and Demand for Jury Trial in the Montana Thirteenth Judicial District Court, Yellowstone County, Cause No. DV-56-2023-0000707-NE (the "Hatmaker Lawsuit"). *See* Ex. One attached.

20. The Hatmaker Lawsuit alleges that Hatmaker engaged in counseling sessions with McCormick from 2016 to 2022. Ex. One, ¶ 15.

21. As set forth in her Response Brief Opposing Defendant

McCormick's motion in limine, the gravamen of Hatmaker's Lawsuit is that during the period of their counseling sessions, McCormick engaged in a sexual relationship with her while counseling her. Specifically, Hatmaker stated that "Since the filing of the Complaint, Hatmaker has provided expert reports, deposition questioning and testimony, exhibit lists, and participated in two mediations, all of which have specifically mentioned or incorporated the sexual relationship between the two. Thus, Defendant is and has been on notice that his sexual grooming and contact with Plaintiff are 'at issue' regardless of whether the Complaint explicitly uses the word 'sex.'" *See* Plaintiff Hatmaker's Resp. to Def's. Mtns. In Limine, (7/24/24), pg. 5, attached as **Exhibit Four.**

22. On or about July 11, 2022, Hatmaker filed a Complaint against McCormick with the Employment Standards Division of the Montana Department of Labor and Industry. *See* State of Montana, Board of Behavioral Health, Stipulation (2/16/23), ¶ 4, attached as **Exhibit Five.**

23. In her July 11, 2022 Complaint to the Montana Department of Labor and Industry, Hatmaker reported, *inter alia,* that McCormick started to:

> do things like go underneath [Client 3's] cardigans/jackets, so that only the bottom layer of [her] clothing ([her] t-shirt or tank top) was between [them] when he hugged [her]… If [she] was sitting next to him on the couch in his office, he would often have his arm around

> [her], and it was not uncommon for him to link his thumb or fingers into [her] belt loop or 'accidentally' move the bottom of [her] shirt up just enough to touch the skin on [her] back or hip. This was always very confusing to [Client 3] as [she] didn't have a good grid from childhood to compare these experiences to. Both [her] biological father and [her] stepfather were very distant physically and emotionally. It was difficult for [Client 3] to know if this was a normal level of comfort/intimacy to have with [her] 'dad.' But he kept assuring [her] that he was a safe person, that [she] was his daughter, and [she] had grown to trust him.

Ex. Five, at ¶ 59.

24. Hatmaker further reported various other sexual contact by McCormick. *See* Ex. Five, ¶s 70 – 87.

25. In response to Hatmaker's July 11, 2022 complaint, McCormick admitted he engaged in sexual contact with her. *See* Ex. Five, ¶ 103.

26. In response to Hatmaker's July 11, 2022 complaint, McCormick asserted that his sexual relationship with Hatmaker was "mutual and consensual." *See* Ex. Five, ¶ 106.

27. McCormick stipulated that his conduct towards Hatmaker constituted violations or was otherwise in contravention of his professional code of ethics or conduct. *See* Ex. Five, ¶ 4 (Agreed Conclusions of Law).

28. McCormick testified during his deposition on February 16, 2024 that he engaged in various types of physical touching or caressing, that was or could be considered sexual or erotic in nature.

29.     The Hatmaker Lawsuit alleges injury or damage that was expected or intended or that a reasonable person would have expected.

## Count One - Declaratory Relief

30.     American Casualty incorporates the preceding paragraphs 1 through 29 as if set forth in full herein.

31.     The allegations of the Hatmaker Lawsuit are not covered by any of the policies of insurance referenced in paragraph 13 above. Coverage is barred by the sexual misconduct exclusion set forth in Endorsement Form GSL15564, and thus there is no duty to defend or indemnify.

32.     The allegations of the Hatmaker Lawsuit are not covered by any of the policies of insurance referenced in paragraph 13 above. Coverage is barred by Section V. Exclusions, subparagraph K, and thus there is no duty to defend or indemnify.

33.     Accordingly, for these reasons, and for any other reasons available under the referenced Policies and Montana law, American Casualty has no duty to defend or indemnify James McCormick for the claims made in the Hatmaker Lawsuit.

Wherefore, Plaintiff American Casualty requests this Court enter its Declaratory Judgment as follows:

1. For judgment that there is no coverage under the insurance policies at issue in this case for the Hatmaker Lawsuit and that, therefore, American Casualty does not owe a duty to defend or to indemnify Defendant McCormick with respect to Hatmaker's Lawsuit; and

2. Declaring that Ashley Hatmaker may not collect any judgment or settlement from American Casualty;

3. Ordering that Defendants pay American Casualty its reasonable costs incurred in prosecuting this lawsuit; and

4. For such other and further relief as to this Court seems just and proper.

DATED November 8, 2024.

/s/ Paul N. Tranel
Paul N. Tranel
BOHYER, ERICKSON, BEAUDETTE &
TRANEL, PC
*Attorneys for Plaintiff*